UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

ANDREW BARRETT,

    Plaintiff,

  v.                                    Case No.: 2:15-cv-1348
                                      JUDGE SMITH
                                      Magistrate Judge Jolson

THE ADT CORPORATION,

    Defendant.

**OPINION AND ORDER**

This matter is before the Court upon Plaintiff's Motion for Leave to File Amended Class Action Complaint ("Motion to Amend") (Doc. 43) and Defendant The ADT Corporation's ("Defendant" or "ADT") Motion to Deny Class Certification ("Motion to Deny Certification") (Doc. 15).[1]  Both motions are fully briefed and are ripe for disposition.  For the following reasons, Plaintiff's Motion to Amend is **GRANTED in part**, and Defendant's Motion to Deny Certification is **GRANTED**.

## I. BACKGROUND

**A.**     **Factual Background**[2]

This action stems from ADT's alleged use of prerecorded telemarketing calls—by and through one of its 300 licensed dealers, Security Solutions, Inc. ("SSI")—to sell its residential

---

[1] The arguments in support of and against amending the Complaint are intimately connected to the arguments in support of and against class certification.  As such, both motions will be addressed together herein.
[2] Plaintiff has alleged extensive facts in his Complaint and Amended Complaint, many of which do not bear recitation for the purposes of determining whether class certification is appropriate.  Also, the facts recited here are taken from Plaintiff's original Complaint, which largely mirror the factual allegations in Plaintiff's Amended Complaint in both content and numbering.

alarm products and services. On September 12, 2013, Plaintiff received a prerecorded telemarketing call on his cell phone. (Doc. 1, Compl. at ¶ 58). Barrett alleges that he attempted to identify himself, but was cut off by a prerecorded voice, which identified itself as "Katie" calling from "Home Protection." (*Id*. at ¶¶ 60–61). Barrett responded, a significant delay occurred, and "Katie" informed Barrett that the calling party was looking for an advertising home in his area. (*Id*. at ¶ 62). Plaintiff responded that he was not interested and terminated the call. (*Id*. at ¶ 63).

Plaintiff's Complaint alleges the call was placed from a call center in the Philippines using automated technology developed by a company called Perfect Pitch. (*Id*. at ¶ 64). The software allows operators to use keystrokes to play prerecorded messages in response to individualized inquiries from parties on the other end of the line. (*Id*. at ¶ 65). This allows operators to handle several "conversations" simultaneously. (*Id*.). Barrett alleges that Philippine call centers used the Perfect Pitch technology to complete and connect calls to more than 5 million people on SSI's behalf between June and December 2013. (*Id*. at ¶ 66). All said, approximately 13.8 million calls were attempted. (*Id*.). Plaintiff's Complaint provides several transcripts of calls that underline the inaccuracies known to befall the process as a whole and details other common problems that some call recipients experience. (*Id*. at ¶¶ 67–71). Barrett alleges that there are thousands of class members who are identifiable by reviewing call logs. (*Id*. at ¶ 74). On April 21, 2015, Plaintiff filed a Class Action Complaint proposing to represent the following class:

> "All persons within the State of Ohio who, from June 3, 2013 through December 30, 2013, (a) received a telemarketing call, (b) from or at the direction of Security Solutions, (c) for the purpose of promoting ADT services, and (d) that was initiated using a prerecorded voice message."

(*Id*. at ¶ 73).

On August 21, 2015, Plaintiff moved to amend his complaint (Doc. 43). The Amended Complaint contained additional factual allegations clarifying that the Phillipine call center used an automatic telephone dialing system ("ATDS") to place calls, including the one made to Plaintiff. (Doc. 43–1, Am. Compl. at ¶¶ 60–63). In addition, Plaintiff moved to amend his class allegations to reflect alleged violations of 47 U.S.C. § 227(b)(1)(A) (cellular phone-related violations), where he originally claimed violations of 47 U.S.C. § 227(b)(1)(B) (residential phone-based violations). (*Compare* Doc. 2, Compl. at ¶ 76(b) *with* Doc. 43-1, Am. Compl. at ¶ 80(c)). Finally, Plaintiff's proposed Amended Complaint expands the proposed class from Ohio citizens to a nationwide class. (*Compare* Doc. 2, Compl. at ¶ 73 *with* Doc. 43-1, Am. Compl. at ¶ 77).

**B.     Procedural Background**

This is not the first time ADT has defended litigation based on similar factual allegations. The parties' briefing primarily focuses on the relevance of the following lawsuits::

- *Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill.) (nationwide TCPA class action lawsuit lasting two years; resulted in $15 million settlement; involved counsel currently representing Plaintiff) (Doc. 1, Compl. at ¶¶ 2, 33–34; Doc. 15, Mot. to Deny at 2; Doc. 28, Resp. at 2);

- *Fitzhenry v. The ADT Corp.*, No. 13-08708 (N.D. Ill.) (transferred to S.D. Fla. No.14-80180; nationwide TCPA class action lawsuit; class certification denied; plaintiff dismissed individual claims with prejudice; involved counsel currently representing Plaintiff) (Doc. 15, Mot. to Deny at 2; Doc. 28, Resp. at 3–4).

Plaintiff argues that these actions put—or should have put—ADT on notice that SSI was using illegal telemarketing tactics to promote ADT's products and services, yet ADT failed to take appropriate steps to curb SSI's activity (Doc. 2, Mot. to Cert. at 1–2).

*Fitzhenry* involved the same counsel and nearly identical facts to the case at bar. No. 14-80180, 2014 WL 6663379 (S.D. Fla. Nov. 3, 2014). In that case, Fitzhenry originally proposed to represent a class consisting of:

3

> "All persons within the United States whom (a) ADT, through their agents, played a pre-recorded message during a telephone call the purpose of which was to sell ADT goods or services (or develop "leads" for such sales) from June 22, 2013 ongoing, and (b) and who did not previously give such number to ADT, or their agents with permission to be contacted."

*Id.* at *2.  The parties conducted discovery related to that proposed class over a six-month period, pursuant to Judge Middlebrooks' scheduling order.  (Doc. 38, Reply at 4).   After the close of discovery, Fitzhenry narrowed the scope of his proposed class to include:

> "All persons within the United States who, from October 7 through October 11, 2013, received a telemarketing call at the telephone numbers on the list of class calls provided to the Court, promoting ADT's goods and services, and that included the introductory message 'Hi, this is Shelby.'"

*Fitzhenry*, 2014 WL 6663379, at *2.  Fitzhenry alleged that approximately 36,748 calls were made using Pitch Perfect software during the amended proposed class period.  *Id.*  Fitzhenry alleged violations under 47 U.S.C. § 227(b)(1)(B) (residential phone-based violations) and sought certification under Rule 23(b)(3).  *Id*.  In short, the present case differs from *Fitzhenry* only in that Plaintiff here seeks to have a broader class certified and seeks damages for cellular phone-related violations under 47 U.S.C. § 227(b)(1)(A) (post-Motion to Amend).

Ultimately in *Fitzhenry*, Judge Middlebrooks held that "individual issues predominate in light of the TCPA's safeharbor provisions, particularly whether there was an established business relationship between the caller and the call recipient."  *Id*. at *5.  Further underscoring the troublesome potential for individual fact-finding, Judge Middlebrooks reasoned that "[if] the Court were to find that the use of any prerecorded message in an otherwise interactive call does not necessarily violate the TCPA, it is unclear whether the Court would then be forced to examine each call to determine whether any particular call violated the TCPA."  *Id*. at *6.  In light of each call's potentially dissimilar nature, the court found the case to be less suitable for

4

class certification than cases involving the same prerecorded message. *Id.* The court also found that Fitzhenry failed to meet his burden of demonstrating that class certification was a superior vehicle to joinder or consolidation given the prevalence of individual issues. *Id.* at *7. Having determined that Fitzhenry failed to satisfy the requirements of Rule 23(b)(3), the court declined to address the conjunctive requirements set forth in Rule 23(a). *Id.*

## II. DISCUSSION

ADT has moved to deny certification of Plaintiff's proposed class (Doc. 15). Plaintiff responded in opposition on July 13, 2015 (Doc. 28), and ADT replied in support on August 4, 2015. Further, Plaintiff moved to amend his complaint (Doc. 43), to which ADT responded (Doc. 46) and Plaintiff replied (Doc. 49). These motions are fully briefed and are ripe for disposition.

### A. Plaintiff's Motion for Leave to File Amended Class Action Complaint

Before discussing the merits of class certification, the Court finds it necessary to address Plaintiff's Motion for Leave to File Amended Class Action Complaint (Doc. 43).

#### 1. Standard for Rule 15 Amendments

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The grant or denial of a request to amend a complaint is left to the broad discretion of the trial court. *Gen'l Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990). In exercising its discretion, the trial court may consider such factors as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] district court abuses its discretion when it fails to state a basis for its decision to deny a motion to amend." *Rose v.*

5

*Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 425 (6th Cir. 1999)); *Moore v. City of Paducah*, 790 F.2d 557, 559 (6th Cir. 1986); *see also Foman*, 371 U.S. at 182). "A motion to amend a complaint should be denied if the amendment would be futile." *Runyon v. Glynn*, 64 F. App'x 924, 925 (6th Cir. 2003) (citing *Marx v. Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984)).

### 2. Amendment Analysis

Here, as mentioned *supra*, Plaintiff seeks to amend his complaint to: 1) add factual allegations regarding the technology used to place the subject telephone calls; 2) amend the section of the TCPA under which he alleges violations; and 3) expand the proposed class to a nationwide class. (Doc. 43-1, Am. Compl. at ¶¶ 60–63, 77, 80, 86, 90). Granting leave to amend is proper here, but only as to Plaintiff's individual claims. In both his original and amended complaints, Plaintiff alleges that he received the call in question on his cell phone. (Doc. 2, Compl. at ¶ 58; Doc. 43-1, Am. Compl. at ¶ 58). The Court does not find any undue delay, bad faith or dilatory motive on Plaintiff's part, nor is ADT prejudiced by allowing Plaintiff to amend his individual claims. Further, the Court feels justice requires that Plaintiff be permitted to amend his complaint to seek damages under the section of the TCPA that corresponds to the violation he has alleged. Therefore, Plaintiff's Motion to Amend, as it pertains to Plaintiff's individual claims, is **GRANTED**.

Whether Plaintiff is deserving of leave to amend his class allegations is a different question altogether and requires a separate analysis. ADT opposes Plaintiff's Motion to Amend primarily on the basis that amendment would be futile for two reasons: 1) the proposed amended complaint primarily seeks to expand the scope of the class and "does not cure the insuperable barriers to class treatment ADT identified in its pending motion to deny class certification."

(Doc. 46, Mot. to Am. Resp. at 1); and 2) the TCPA is unconstitutional and provides no right of action to Plaintiff. (*Id.*). Many aspects of this analysis overlap with the analysis of whether class certification is proper for the original proposed class. As such, the Court will provide a more in-depth factual analysis of the original proposed class below. What is important here is that Plaintiff primarily seeks amendment to expand the proposed class's scope rather than cure the perceived shortcomings identified in ADTS's class certification briefing.

Plaintiff has correctly identified that the Sixth Circuit has previously held—and this Court has echoed—that "[a] proposed amendment is futile [only] if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Snelling v. ATC Healthcare Servs., Inc.*, No. 2:11-CV-983, 2012 WL 4848890, at *2 (S.D. Ohio Oct. 10, 2012) (King, M.J.) (quoting *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000) (citing *Thiokol Corp. v. Dep't of Treasury, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir. 1993))). In *Thiokol*, the Court cited *Foman* for the rationale behind the rule. The *Foman* court stated, "[i]*f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief*, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. at 182 (emphasis added). Typically, the viability of a plaintiff's claims is determined at the motion to dismiss stage. Such is not always the case in class action lawsuits. Without even reaching the merits of the class claims, courts possess the power to effectively bar class relief by denying certification. In fact, courts are discouraged from considering the merits of the case when determining the propriety of class certification. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194–5 (2013) ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are

satisfied."). If a district judge is generally able to dispose of class claims without touching the merits of those claims, it stands to reason that a district judge need not grant a motion to amend class allegations and consider the merits at the motion to dismiss stage where class certification is nevertheless inappropriate.

Here then, the question becomes: "Are the underlying facts or circumstances relied upon by Plaintiff a proper subject of relief for the proposed class?" For the reasons set forth in the class certification analysis below, the answer is "no." In short, Plaintiff's original complaint attempts to represent a class that is not fit for certification, and the proposed amendments do nothing to cure the deficiencies of the proposed class.

The Court cautions that the application of this holding is limited and should not be overstated. This case is unique in several important aspects. First, Plaintiff has cited several cases from this Court where judges have reviewed "futility" in the context of a motion to amend. *See Cooper v. Commercial Sav. Bank*, No. 2:12-CV-825, 2013 WL 1703359, at *3 (S.D. Ohio Apr. 19, 2013) (King, M.J.); *Vanburen v. Ohio Dep't of Pub. Safety*, No. 2:11-CV-1118, 2012 WL 5467526, at *4 (S.D. Ohio Nov. 9, 2012) (Deavers, M.J.); *Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-CV-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) (Kemp, M.J.). The present case is distinguishable from these cases. Granting or denying a motion to amend is often a non-dispositive matter. However, where futility has been raised by the parties, arguments in support of and against amendment are often interlaced with merits-based determinations. As such, this Court has said that "it is usually a sound exercise of discretion to permit the claim to be pleaded and to allow the merits of the claim to be tested before the District Judge . . . ." *Vanburen*, 2012 WL 5467526, at *4. Here, unlike *Cooper*, *Vanburen*, and *Durthaler*, Plaintiff's motion to amend is so intimately tied to the issue of certification, the

8

motion to amend is being ruled upon by the District Judge so as to promote judicial efficiency. District Judges in this District routinely deny motions to amend on futility grounds. *See, e.g.*, *Keaton v. Lucent Techs., Inc.*, No. C2-03-890, 2005 WL 1396941, at *15 (S.D. Ohio June 13, 2005) (Sargus, J.); *Carter v. Twin Valley Behavior*, No. 2:12-CV-795, 2012 WL 5931530, at *1 (S.D. Ohio Nov. 27, 2012) (Watson, J.); *William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-CV-615, 2011 WL 1256670, at *10 (S.D. Ohio Mar. 31, 2011) (Frost, J.).  The Court has undergone a thorough examination of the record and can reach but one conclusion—without touching the merits—regardless of which proposed class allegations control.

Second, Plaintiff's reliance on *In re Cardizem CD Antitrust Litig.*, No. 99-MD-1278, 2000 WL 33180833, at *1 (E.D. Mich. Sept. 21, 2000), is also misplaced.  *Cardizem* cited *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417 (6th Cir. 2000) when the court rejected the defendants' arguments that "they can successfully oppose certification of the broader class in the proposed amended [complaint]" because that "do[es] not satisfy the Sixth Circuit's test for futility." *Id*., at *3.  Briefing on certification had yet to be completed at the time the *Cardizem* court ruled on the plaintiff's motion to amend.  Here, conversely, there is nothing left to be developed or argued by the parties.  The issue of certification has been fully briefed, albeit for a narrower class than Plaintiff proposes in his amended complaint.  As such, the Court has sufficient information in front of it to deny certification to either of Plaintiff's proposed classes. Plaintiff's amended complaint only broadens the original class and fails to cure any of the underlying defects that make certification of the original class inappropriate.

Finally, despite the fact that the parties have not completed discovery in the instant case, counsel for both parties have already litigated very similar facts at least twice before and the Southern District of Florida has denied certification for a nearly identical proposed class.  Hence,

9

the parties and their respective counsel are privy to large amounts of information that "fresh" litigants and their counsel simply do not have. This knowledge is apparent in the detailed factual allegations in Plaintiff's complaints and the parties' extensive briefing on certification and the merits.

In this Court's view, granting leave to amend the class allegations here is a means to three undesirable ends: 1) it would subject the parties to more costly discovery; 2) it would beget additional briefing by the parties; and most importantly, 3) it would delay the inevitable denial of class certification. Having found Plaintiff's proposed amendment improper, the Court need not address the constitutionality of the TCPA as it relates to the present claims. Accordingly, Plaintiff's Motion for Leave to Amend Class Complaint, as it pertains to the class allegations, is hereby **DENIED**.

**B.    Class Certification**

Plaintiff filed a Motion for Leave to File *Instanter* Plaintiff's Motion for Class Certification and to Stay Briefing Pending Completion of Discovery (Doc. 3) and a Motion for Class Certification and to Stay Briefing (Doc. 2). Despite Plaintiff's request to stay substantive briefing on the issue of class certification, ADT filed a Motion to Deny Class Certification (Doc. 15). Recently, the parties have filed a Joint Motion to Amend the Pretrial Order (Doc. 63). In that motion, the parties have agreed that Plaintiff will withdraw his Motion to Certify in light of the Supreme Court's recent ruling in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016). The parties have fully briefed ADT's Motion to Deny Certification and the issue is ripe for disposition.

**1.     Class Certification Standard of Review**

Defendant moves to deny class certification under Federal Rule of Civil Procedure 23(c)(1). Federal Rule of Civil Procedure 23(a) provides that class action lawsuits may be certified if:

> 1) the class is so numerous that joinder of all members is impracticable;
>
> 2) there are questions of law or fact common to the class;
>
> 3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> 4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a)(1)–(4). In addition to the four requirements set forth in Rule 23(a), the party seeking certification must also demonstrate that is satisfies at least one of the subcategories of Rule 23(b). *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Here, Plaintiff has moved for certification pursuant to Rule 23(b)(3), which dictates that a class action may proceed when:

> "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action."

Fed. R. Civ. P. 23(b)(3).  As the Advisory Committee's Notes of 1966 indicate, the purpose of Rule 23(b)(3) is to "achieve economies of time, effort, and expense, and promote, uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results" where other provisions of Rule 23(b) are not applicable.  *Id.*

District courts have broad discretion in certifying class actions so as long as they exercise such discretion within the framework of Rule 23.  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002).  "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required."  *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011).  Further, a class "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen*, 133 S. Ct. at 1194–5.

### 2. Certification Analysis

The decision of whether to grant or deny class certification to Plaintiff's instant proposed class boils down to a few simple questions: 1) "Being mindful the traditional notion of comity, is this proposed class different than the class which was denied certification in *Fitzhenry*?"; 2) "Was *Fitzhenry* decided correctly?"; and 3) "Do the parties—and the Court—need additional discovery to affirmatively answer the first two questions?"  The parties have spent considerable time and resources in arguing these very points.  Pursuant to Federal Rule of Civil Procedure 23

(c)(1)(A)'s mandate that courts determine whether to certify the putative class as soon as practicable, the Court is convinced that a sufficient record exists to answer these questions.

### a. Comity and Development of the Record

Before proceeding with this analysis, which makes multiple references to Judge Middlebrooks' decision in *Fitzhenry* and the facts of that case, the Court cautions that it is not "blindly adhering" to the *Fitzhenry* decision. As plaintiff correctly argues, comity is a principle of consideration, not blind adherence. (Doc. 28, Resp. at 9). This Court is not precluded from granting certification because a similar class was denied certification in *Fitzhenry*. However, this Court finds significant value in Judge Middlebrooks' well-reasoned decision and consideration of such is appropriate. Therefore, any references to *Fitzhenry* should be construed as helpful or guiding, but not controlling in the instant matter.

As mentioned above, counsel for the parties have litigated similar—if not identical—facts on several occasions. Here, Plaintiff seeks certification of the following class:

> "All persons within the State of Ohio who, from June 3, 2013 through December 30, 2013, (a) received a telemarketing call, (b) from or at the direction of Security Solutions, (c) for the purpose of promoting ADT services, and (d) that was initiated using a prerecorded voice message."

(Doc. 1, Compl. at ¶ 73). Section 227(b)(1)(A)(iii) of the TCPA makes it unlawful for a person to call the cellular telephone number of any other person using an automatic telephone dialing system or an artificial or prerecorded voice without the recipient's prior express consent. Conversely, Section 227(b)(1)(B) of the TCPA makes it unlawful to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.

Despite Plaintiff's claims that it needs additional discovery before class certification can be meaningfully briefed and determined, Plaintiff cannot deny that he has benefited from

extensive discovery conducted in other "fiercely litigated" actions. Aside from the discovery that has been conducted in this case since the parties briefed the issue of certification, it appears that during discovery in *Fitzhenry*, Plaintiff's present counsel received *all* information within ADT's possession that is pertinent to the proposed class. (Doc. 38, Reply at 4). In *Fitzhenry*, the plaintiff originally sought to have a nationwide class certified for roughly the same period that Plaintiff seeks to have certified here. *Fitzhenry*, 2014 WL 6663379, at *2. It was not until after close of discovery that the plaintiff narrowed the proposed class's timeframe to a five-day period. *Id.* ADT has aptly pointed out that the plaintiff never sought to extend the six-month discovery period in *Fitzhenry*, even though Plaintiff now suggests that six months was insufficient to conduct ample discovery. (Doc. 38, Reply at 4; Doc. 28, Resp. at 3). As Plaintiff's current proposed class is a subset of the operative class during discovery in *Fitzhenry*, the Court is of the opinion that more discovery is not needed to determine the propriety of granting or denying certification.

Regardless of whether Plaintiff feels he has received ample discovery, the fact remains that no amount of discovery can cure the proposed class's immutable characteristics that make it unfit for class treatment. The Court recognizes that a standing or typicality issue may now exist by virtue of the fact that the Court has granted Plaintiff's Motion to Amend his individual claims, but not his class allegations. Plaintiff received the call in question on a cellular phone but is left seeking to represent a class based on violations of 47 U.S.C. § 227(b)(1)(B) (residential phone-based violations). The Court denied Plaintiff's Motion to Amend his class allegations because the amendment would be futile. Standing and typicality issues aside, the analysis of whether class certification is proper for alleged violations under 47 U.S.C. §§ 227(b)(1)(A) and/or

14

(b)(1)(B) are effectively the same here. Importantly, both sections of the TCPA except telephone calls to parties who have given prior express consent to be called.

### b. Ascertainability

It is well-settled that district courts must abstain from delving into the merits of class claims beyond what is necessary at the certification stage. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551–2 (2011); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 157 (1974). Here, one may assume, *arguendo*: 1) that ADT—through its authorized dealers—did in fact violate the TCPA for some portion of the 13.8 million calls it allegedly placed during the proposed class period; and 2) ADT can be held vicariously liable for those violations. If such were true, Plaintiff's proverbial "elephant in the room" remains: There is no way for the parties or the Court to ascertain which calls are unactionable under the TCPA (*i.e.*, which call recipients gave prior consent for ADT or its vendors to contact them) without undergoing extensive, individualized fact-finding.

Plaintiff posits that the instant proposed class is different than that of *Fitzhenry* because it "relate[s] to a different set of calls, over a different period of time, without limitation to a particular prerecorded voice message." (Doc. 28, Resp. at 14). Plaintiff seemingly ignores how or why these perceived differences may alleviate the need for individualized fact-finding. The Sixth Circuit and this District have held that once individualized fact-finding is necessary to identify class members (in what have commonly been referred to as "mini-hearings" or "mini-trials"), class treatment is inappropriate. *See Romberio v. Unumprovident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009); *McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 392 (S.D. Ohio 2001) (Marbley, J.); *Schumacher v. State Auto. Mut. Ins. Co.*, No. 1:13-CV-00232, 2015 WL 421688, at *7 (S.D. Ohio Feb. 2, 2015) (Black, J.). "The existence of an ascertainable class of persons to

be represented by the proposed class representative[s] is an implied prerequisite of Federal Rule of Civil Procedure 23." *John v. Nat'l Sec. Fire and Cas. Co.,* 501 F.3d 443, 445 (5th Cir. 2007) (cited with approval in *Romberio,* 385 Fed. Appx. at 431).  As this Court has stated, "the touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case *or call for individualized assessments to determine class membership.*"  *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387, 391 (S.D. Ohio 2008) (Marbley, J.) (emphasis added).

In *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-CV-186, 2010 WL 3397501 (S.D. Ohio Aug. 25, 2010) (Marbley, J.), this Court was tasked with determining whether class certification was proper where plaintiffs proposed to represent a class of consumers who were allegedly overbilled by a commercial motor carrier.  The operative statute denied standing to any consumer who failed to contest their bill within 180 days.  This Court stated:

> "To the extent that the proposed class definition does not limit the class to those DHL customers who complied with the 180–day notice provision, it is overbroad. Additionally, to the extent that this court would have to engage in individualized factual inquiries to determine those class members who complied with the 180–day requirement, the class is not ascertainable."

*Cerdant*, 2010 WL 3397501, at *6.  The present case is no different.  Plaintiff's proposed class is overbroad because it does not limit the class to consumers who did not give prior consent to be contacted by ADT.  Moreover, individualized fact-finding is required to ascertain the members of the proposed class.  It is within a trial court's discretion to modify class definitions to comport with the requirements of Rule 23.  *See Stewart*, 252 F.R.D. 387.  Here, however, no modifications can be made to overcome the need for individualized fact-finding in ascertaining the identity of class members.  Accordingly, Plaintiff has failed to satisfy a prerequisite of Rule 23 and the Court finds class treatment to be inappropriate.

### c. Rule 23(b)(3) Requirements

The Court is also not convinced that Plaintiff has met his burden of showing that he has satisfied Rule 23(b)(3)'s requirements.  As stated above, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "The advisory committee states that a court is required to find that common issues predominate in a Rule 23(b)(3) class because '[i]t is only where this predominance exists that economies can be achieved by means of the class-action device.'"  *Coleman*, 296 F.3d at 448 (citing Fed. R. Civ. P. 23(b)(3) 1966 advisory committee's note.).

There is no doubt that common issues exist within the proposed class, just as they did in *Fitzhenry*.  Namely, common issues exist as to whether the technology used to make the telephone calls violates the TCPA and whether ADT can be held vicariously liable for an authorized dealer's actions under the TCPA.  Despite this, the important, individualized question of whether each putative class member gave prior express consent to be contacted remains and overwhelms the common issues.

As ADT has correctly pointed out, consumers can give consent to be contacted by a company in a number of ways.  *See Baisden v. Credit Adjustments, Inc.*, No. 2:13-CV-992, 2015 WL 1046186, at *8 (S.D. Ohio Mar. 10, 2015) (Sargus, J.) *aff'd,* No. 15-3411, 2016 WL 561735 (6th Cir. Feb. 12, 2016) (consent may be obtained through an intermediary); *Hill v. Homeward Residential, Inc.*, No. 2:13-CV-388, 2014 WL 4105580, at *4 (S.D. Ohio Aug. 19, 2014) (Frost, J.) *appeal not considered,* 799 F.3d 544 (6th Cir. 2015) (express consent).  Plaintiff contends that "ADT is in exclusive control of *its own records* relating to how *it* may have obtained a particular

consumer's consent to call his or her phone number, or whether or not the consumer is or was an ADT customer." (Doc. 28, Resp. at 15) (emphasis added). This may be true, but applying the rationale of *Baisden* to the present case makes it possible for ADT to obtain consent through one of ADT's marketing partners or one of its 300 independent dealers. It is possible—if not likely—that ADT does not possess any record of such consent, but that does not mean consent has not been given. Even this analysis discounts the fact that the best place to find proof of consent may rest with the consumers themselves. The only way to locate a call recipient's possible consent is to conduct a "mini-trial" for each individual. The Court is confident that the time and resources devoted to determining the common questions would pale in comparison to the time and resources spent trying to determine whether each putative class member had previously consented to ADT contacting them. As such, the class members' common questions do not predominate over individual questions. For these same reasons (*i.e.*, needing to hold "mini-trials" or "mini-hearings" for each putative class member), the Court also finds that class treatment is not a superior vehicle to other available methods of fairly and efficiently adjudicating the controversy.

      Finally, Plaintiff seems to hint that Judge Middlebrooks' ruling was somehow tainted or incomplete because the court did not discuss Rule 23(a)'s requirements. No such inference should be drawn. The requirements set forth in Rules 23(a) and (b) are not factors to be weighed against each other; they are requirements. As such, a party cannot obtain class certification unless all of the requirements are met. It is not improper for a court to decline to discuss the Rule 23(a) requirements when Rule 23(b) requirements clearly are not met. *See Coleman*, 296 F.3d at 446 ("Because we hold that the proposed class violates the requirements of Rule

23(b)(2), we will not address the question of whether plaintiff meets the Rule 23(a) requirements."). Accordingly, the Court need not discuss Rule 23(a)'s requirements here either.

In sum, the Court **GRANTS** ADT's Motion to Deny Certification because the members of Plaintiff's proposed class are unascertainable without individualized fact-finding and Plaintiff has failed to meet Rule 23(b)(3)'s requirements. Having found such, the Court need not determine the constitutionality of the TCPA.

### C. Ancillary Matters

In addition to the Motion to Amend and Motion to Deny Certification, there are a number of other motions pending in this case, including: Plaintiff's Motion for Class Certification and to Stay Briefing (Doc. 2) and related Motion for Leave to File *Instanter* Plaintiff's Motion for Class Certification (Doc. 3); ADT's Motion to Dismiss (Doc. 14); ADT's Motion for Leave to File Sur-Reply to Motion to Dismiss (Doc. 40); and the parties' Joint Motion to Amend the Pretrial Order (Doc. 63). The Court will address these motions in turn.

### 1. Plaintiff's Motion for Class Certification and to Stay Briefing (Doc. 2) and related Motion for Leave to File *Instanter* Plaintiff's Motion for Class Certification (Doc. 3)

By virtue of the Parties Joint Motion to Amend the Pretrial Order and in light of the Supreme Court's recent holding in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016), Plaintiff's Motion for Class Certification and to Stay Briefing and related Motion for Leave to File Instanter Plaintiff's Motion for Class Certification have been withdrawn and are **DENIED** as moot.

> **2.    ADT's Motion to Dismiss (Doc. 14) and Plaintiff's Motion for Leave to File Sur-Reply to Motion to Dismiss (Doc. 40)**

Having granted Plaintiff's motion to amend his individual claims and denying class certification, ADT's Motion to Dismiss and Plaintiff's Motion for Leave to File Sur-Reply are moot and therefore **DENIED**.

> **3.    Joint Motion to Amend the Pretrial Order (Doc. 63)**

In light of this decision and the parties' submission of their Joint Motion to Amend the Pretrial Order, the parties are hereby **ORDERED** to meet and confer for the purpose of determining whether the date extensions proposed in Doc. 63-1 are still amenable to the parties. The parties shall contact the chambers of Magistrate Judge Jolson within ten (10) days of this order to: 1) confirm the schedule proposed in Doc. 63-1 or submit a new proposed schedule; and 2) schedule a status conference to address any remaining discovery issues.

### III.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Leave to File Amended Class Action Lawsuit is **GRANTED in part**; ADT's Motion to Deny Class Certification is **GRANTED**; ADT's Motion to Dismiss (Doc. 14) and Plaintiff's Motion for Leave to File Sur-Reply to Motion to Dismiss (Doc. 40) are **DENIED** as moot; and Plaintiff's Motion for Class Certification and to Stay Briefing and related Motion for Leave to File *Instanter* Plaintiff's Motion for Class Certification are withdrawn and **DENIED** as moot.

The Clerk shall **REMOVE** Documents 2, 3, 14, 15, 40, and 43 from the Court's pending motions list.

**IT IS SO ORDERED.**

  */s/ George C. Smith*
  **GEORGE C. SMITH, JUDGE**
  **UNITED STATES DISTRICT COURT**